No. 760        August 12, 2026        133

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TIMOTHY SCOTT BURKEEN,
*Defendant-Appellant.*

Coos County Circuit Court
24CR22863; A186044

Martin E. Stone, Judge.

Submitted July 1, 2026.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kelsey Townsend, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Paul L. Smith, Solicitor General, and Megan Mizuta, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for unauthorized use of a vehicle (UUV). He contends that the trial court erred in denying his motion to suppress evidence that an officer obtained during an investigatory stop. Defendant maintains that the officer lacked objectively reasonable suspicion that he had committed UUV. We review "a trial court's denial of a motion to suppress for legal error, and we are bound by the trial court's factual findings if there is any constitutionally sufficient evidence in the record to support them." *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017). We agree with the trial court's legal conclusion, supported by its factual findings, that the evidence, considered in the totality of the circumstances, supported the officer's reasonable suspicion that defendant had committed UUV. We therefore affirm.

Under Article I, section 9, of the Oregon Constitution, an officer may conduct an investigatory stop of an individual if the officer has reasonable suspicion—based on specific and articulable facts—that the person has engaged in criminal activity. *Maciel-Figueroa*, 361 Or at 182. To satisfy that standard, a court "must find that the officer actually suspected that the stopped person had committed or was about to commit a specific crime or type of crime, and the court must conclude that the officer's subjective belief was objectively reasonable under the totality of the circumstances existing at the time of the stop." *State v. Betancourt*, 374 Or 44, 49, 573 P3d 389 (2025) (internal quotation marks omitted). The articulable facts as observed by the officer need not conclusively indicate illegal activity but need only support the reasonable inference that the person has committed a crime. *State v. Wampler*, 325 Or App 722, 730, 530 P3d 133, *rev den*, 371 Or 477 (2023). "It is the state's burden to establish that an officer had reasonable suspicion to initiate a stop." *State v. Rodriguez*, 320 Or App 1, 8, 511 P3d 424 (2022).

Defendant does not challenge the trial court's conclusion that Deputy Francis subjectively believed that defendant had committed unlawful use of a vehicle. He argues only that her subjective belief was not objectively

reasonable under the totality of the circumstances. We therefore describe the facts relevant to that question.

Someone stole a side-by-side (an ATV of sorts) and a trailer from Coos Bay Toyota. A person named James LaBine[1] posted photos on Facebook of the stolen side-by-side and trailer being towed by a black pickup truck, along with a message asking people to "share and help us recover" the items:



That same day, Coos Bay police issued an "attempt to locate" (ATL) for the stolen trailer and side-by-side. Police located the black pickup truck, but it was no longer towing the trailer and side-by-side.

---

[1] After defendant's arrest, officers learned that LaBine is a sales manager for Coos Bay Toyota, but they did not have that information at the time of the interaction with defendant.

Francis saw LaBine's Facebook post and assumed that LaBine was either an employee or a friend of an employee of the car dealership. Francis had also received the ATL and knew that police had located the black pickup but not the side-by-side or trailer.

Later, LaBine posted again on Facebook, stating that the person or people who had taken the side-by-side and trailer had "switched vehicles" and again asking for help finding the truck that was now towing the stolen items:



Francis saw LaBine's second Facebook post a couple of days after the first post was made. The same day she saw the second post, she saw a truck parked in a pull-out. She believed that the truck was the same as the one depicted in

LaBine's second Facebook post because the truck's color was "kind of unique" and the canopy had a "flare, not a typical run-of-the-mill canopy" that also was "kind of unique." She parked behind the truck and went to speak with the driver, who was defendant.

The conversation between defendant and Francis was captured on Francis's body camera. She told defendant that she recognized his truck from a photo that she saw of the truck pulling a side-by-side the day before. Defendant denied having a side-by-side and denied having pulled one for someone else on a trailer. He explained that he had been working at a farm the entire day prior and that no one had access to his truck during that time. Francis is familiar with the farm where defendant said he had been. Once defendant mentioned the farm, Francis recognized that the location where the picture in the second Facebook post had been taken was across the road from that same farm. At that point, Francis told defendant that he was not free to leave. Defendant then provided information that led police to the side-by-side, and the state ultimately charged him with UUV.

Defendant moved to suppress the evidence that police obtained after Francis told him he was not free to leave. He argued that the Facebook post was akin to an informant's report and was not sufficiently reliable so as to support objectively reasonable suspicion. The trial court denied defendant's motion. It credited Francis's testimony in full and concluded that the Facebook posts were sufficiently reliable. In particular, the court found that Francis had seen LaBine's Facebook posts and that, based on the photos in those posts, she had reasonably inferred that "there's some connection between James LaBine and Coos Bay Toyota"; the court highlighted use of the word "us" in the post as reflecting a connection between LaBine and the car dealership. The court found as "rather persuasive" Francis's description of defendant's canopy, reflected in the photo in the second Facebook post, as distinctive. In addition to the Facebook posts, the court found that Francis had also relied on Coos Bay Toyota's report that the items had been stolen and the Coos Bay police's ATL in making the investigatory

stop. The court also found it significant that the information that Francis learned from defendant about the farm that he had been working on, which Francis then recognized in the photograph in the second Facebook post, corroborated the other information that she had gathered. In all, the court concluded that Francis had objectively reasonable suspicion that defendant had committed UUV.

On appeal, defendant contends that the trial court erred in finding that Francis had objectively reasonable suspicion to investigate defendant for UUV and that the court therefore erred in denying his motion to suppress. He argues, as he did below, that the Facebook posts should be evaluated under the same legal standard as an informant's report. For its part, the state accepts that framing while noting that the legal analysis for determining the reliability of an informant's report as a basis for reasonable suspicion is an imperfect fit in the context of a Facebook post.

When reasonable suspicion is based on an informant's report, that report must be reliable. *State v. Goss*, 219 Or App 645, 650-51, 184 P3d 1155, *rev den*, 345 Or 94 (2008). In assessing whether an informant's report includes "sufficient indicia of reliability," we consider three factors:

- "[W]hether the informant is exposed to possible criminal and civil prosecution if the report is false. That factor is satisfied if the informant gives [their] name to law enforcement authorities";

- "[W]hether the report is based on the personal observations of the informant"; and

- "[W]hether the officer's own observations corroborated the informant's information. The officer may corroborate the tip either by observing the illegal activity or by finding the person, the vehicle and the location substantially as described by the informant."

*State v. Killion*, 229 Or App 347, 355, 211 P3d 367, *rev den*, 347 Or 349 (2009) (internal quotation marks omitted).[2]

---

[2] We note that some of our cases have framed the test as applying where reasonable suspicion is based "solely" on an informant's report. *E.g.*, *State v. Villegas-Varela*, 132 Or App 112, 115, 887 P2d 809 (1994) ("When reasonable suspicion is based solely on a citizen informant's report, that report must contain some indicia of reliability."). Other cases have not confined the reliability analysis to cases in

Those factors are "intended to serve as an aid in evaluating the reliability of such a report and are not determinative as to the report's reliability." *State v. Cage*, 324 Or App 430, 435, 526 P3d 785 (2023) (internal quotation marks omitted). Ultimately, "whether the report is reliable rests on the particular circumstances in each case, because informant tips vary greatly in their value and reliability." *Killion*, 229 Or App at 356 (internal quotation marks omitted).

As noted above, the parties, below and on appeal, and the trial court all applied the reliability analysis of an informant's report to the Facebook posts. We agree with the state's point that the reliability analysis is an imperfect fit in this context. For instance, it is unclear whether a person posting false information to Facebook exposes that person to criminal or civil liability. That said, assuming the parties' framing that the reliability of the Facebook posts should be assessed using the same framework as that for an informant's report, we conclude that the trial court correctly concluded that the posts—along with the other information that Francis had— supported Francis's objectively reasonable suspicion.

As the trial court found, the Facebook posts were reliable. A named person who was associated with the dealership created the posts and provided photographs of the stolen items. Francis was then able to corroborate the information in the posts' photos with her own observation of the distinctive canopy on defendant's truck and her recognition of the location in the second photo as an area near the farm where defendant said he had been working. *See, e.g.*, *State v. Simpson*, 245 Or App 152, 157-58, 261 P3d 90 (2011) (report was reliable when anonymous citizen gave sufficient details about an incident of intoxicated driving and an accident, and the officer corroborated some, but not all, of the report).

And, as the trial court noted, Francis's reasonable suspicion was not based only on the Facebook posts. At the

---

which the only evidence supporting reasonable suspicion is based on an informant's report. *E.g.*, *Goss*, 219 Or App at 650-52. We can think of no reason why an informant's report should be reliable only when it is the sole source of information supporting reasonable suspicion. The Oregon Supreme Court has never so limited the test in that manner, *e.g.*, *State v. Guggenmos*, 350 Or 243, 256, 253 P3d 1042 (2011), and we therefore consider the reliability of the informant's report whether it is the sole evidence supporting reasonable suspicion or not.

time of her encounter with defendant, she knew of the ATL, that the items had been stolen, and that, although the black truck had been located, the side-by-side and trailer were still missing. In the totality of the circumstances, the trial court correctly found that Francis had objectively reasonable suspicion to investigate.

Affirmed.